UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R<small>OBERT</small> E. T<small>ITUS</small>, J<small>R</small>.,

        Plaintiff,                  Case No. 16-cv-10951

        v.                  U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
                                       G<small>ERSHWIN</small> A. D<small>RAIN</small>

O<small>PERATING</small> E<small>NGINEERS</small>' L<small>OCAL</small> 324
      P<small>ENSION</small> P<small>LAN</small>,             U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
                                       A<small>NTHONY</small> P. P<small>ATTI</small>

        Defendant.

<u>O<small>PINION AND</small> O<small>RDER</small> D<small>ENYING</small> P<small>LAINTIFF'S</small> P<small>ROCEDURAL</small> C<small>HALLENGE TO THE</small> S<small>CHEDULING</small> O<small>RDER</small> [14] <small>AND</small> G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> P<small>ARTIAL</small> J<small>UDGMENT ON THE</small> P<small>LEADINGS</small> [19]</u>

## **I. Introduction**

      This is a denial of benefits case under the Employee Retirement Income Security Act ("ERISA"). This action contests the Operating Engineers' Local 324 Pension Fund's (hereinafter "the Pension Plan") determination suspending Robert Titus' ("Plaintiff") pension benefits. Plaintiff's Complaint asserts three claims: (1) illegal suspension of benefits [Count I], (2) failure to provide a full and fair review [Count II], and (3) recovery of suspended benefits [Count III]. Pending before the Court are two motions: Plaintiff's Procedural Challenge to the Scheduling Order [14] and Defendant's Motion for Partial Judgment on the Pleadings [19]. The Motions are interrelated and fully briefed. The critical issue in this case is whether

-1-

Counts I and II of the Complaint fail as a matter of law. The Court finds that Counts I and II fail to state valid claims under ERISA § 502(a)(3). For the following reasons, the Court will **DENY** Plaintiff's Procedural Challenge to the Scheduling Order [14] and **GRANT** Defendant's Motion for Partial Judgment on the Pleadings [19].

## II. Facts

Robert Titus ("Plaintiff" or "Titus") worked for Connelly Crane, a crane rental company. Dkt. No. 14, p. 8 (Pg. ID 473). Plaintiff operated and maintained construction cranes. Plaintiff became a member of the Operating Engineers' Local 324 Pension Plan ("the Pension Plan") in August 1978. Dkt. No. 1, p. 3 (Pg. ID 3). The Pension Plan offers a Service Pension for active participants who are at least 55 years old and have at least 30 years of credited service. *Id.* In February 2014, Plaintiff became eligible for a Service Pension. *Id.*, p. 4 (Pg. ID 4). That same month, Plaintiff explored retiring and pursuing his own sales and consulting company (BJ Crane Consulting). *Id.* There were risks to starting his own company. Plaintiff knew he might lose his retirement income. *Id.* Plaintiff sought to embark on running his own company only if he could still receive his pension benefits. *Id.*, p. 5 (Pg. ID 5). According to ERISA and its regulations:

> "A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee

> is employed, subsequent to the commencement of payment of such benefits--
> **(i)** in the case of a plan other than a multiemployer plan, by an employer who maintains the plan under which such benefits were being paid; and
> **(ii)** in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.
>
> The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term 'employed'."

29 U.S.C. § 1053 (a)(3)(B).

> "Status determination. If a plan provides for benefits suspension, the plan shall adopt a procedure, and so inform employees, whereunder an employee may request, and the plan administrator in a reasonable amount of time will render, a determination of whether specific contemplated employment will be section 203(a)(3)(B) service for purposes of plan provisions concerning suspension of benefits. Requests for status determinations may be considered in accordance with the claims procedure adopted by the plan pursuant to section 503 of the Act and applicable regulations."

29 C.F.R. § 2530.203-3 (b)(6).

In February 2014, Plaintiff requested a Status Determination from the Pension Plan regarding whether his proposed new business would result in suspension of his retirement benefits. Dkt. No. 1, p. 6 (Pg. ID 6). Plaintiff spoke with the Pension Plan's Manager, Duane Menter. Dkt. No. 14, p. 9 (Pg. ID 474). Menter informed the Plaintiff that establishing BJ Crane Consulting and working as a sales representative and consultant would not result in the loss of his retirement benefits provided that he was not operating and maintaining cranes (also

called bargaining unit work) or paid directly by his former employer. *Id.*, p. 10 (Pg. ID 475). The conversation with Menter was later confirmed in a letter:

> "As Mr. Titus described this opportunity to me, he would be establishing a consulting company, recognized by the IRS and with a unique Tax Identification Number and as proprietor of this Consulting Company would be doing work within the construction industry. I explained to him that as long as he was not personally working for an employer obligated to contribute to the Local 324 Pension and that the work he would be performing would not be that which would be covered under a Collective Bargaining Agreement (Bargaining Unit Work) that he would not be in violation of the Pension Fund's rules regarding retirees who return to work."

Dkt. No. 14-2.

According to the Plaintiff, the Pension Plan also allowed retirees to perform less than 40 hours per month of bargaining unit work without having their retirement benefits suspended. Dkt. No. 14, p. 10 (Pg. ID 475). Plaintiff relied on his conversation with Mr. Menter, retired, applied for a Service Pension, and opened BJ Crane Consulting. *Id.*, p. 11 (Pg. ID 476). Plaintiff maintains that he did occasional bargaining unit work, but never exceeding 40 hours per month. *Id.*

On February 6, 2015, approximately ten months after starting BJ Crane Consulting, the Pension Plan informed the Plaintiff that his retirement benefits were being suspended. Dkt. No. 14-6, p. 2 (Pg. ID 508). According to the Pension Plan, Plaintiff was working "forty (40) or more hours in the same trade or craft in which [he was] employed while participating in the [Pension Plan]." *Id.*

On March 16, 2016 Plaintiff filed the present action. Plaintiff alleges that the Pension Plan violated ERISA by suspending his retirement benefits without providing him a valid Status Determination. Dkt. No. 14, p. 11 (Pg. ID 476). Plaintiff's Complaint asserts three claims: (1) illegal suspension of benefits [Count I], (2) failure to provide a full and fair review [Count II], and (3) recovery of suspended benefits [Count III]. Pending before the Court are two motions: Plaintiff's Procedural Challenge to the Scheduling Order, Dkt. No. 14, and Defendant's Motion for Partial Judgment on the Pleadings, Dkt. No. 19. Defendant's Motion for Partial Judgment challenges the sufficiency of Counts I and II. Plaintiff's Motion seeks to have Count I of the Complaint scheduled as a usual civil matter, not just a review of an ERISA denial of benefits. For the sake of efficiency, the Court will take up Defendant's Motion first.

### **III. Standard of Review for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) authorizes either Party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are analyzed under the same de novo standard as motions to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken

as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

When deciding a 12(c) motion for judgment on the pleadings, as a general rule, matters outside the pleadings may not be considered unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). The Court may, however, consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so

-6-

long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* at 89; *see also Chebowski v. Kelsey-Hayes Salaried Pension Plan*, No. 15-13092, 2016 WL 5477335, at *3 (E.D. Mich. Sept. 29, 2016) (Hood, C.J.).

### III. ERISA Remedial Provisions

ERISA has six remedial provisions. The remedial provisions relevant to this action are § 502(a)(1)(B) and § 502(a)(3), which state:

> "A civil action may be brought—
> (1) by a participant or beneficiary—
> (A) for the relief provided for in subsection (c) of this section, or
> *(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;*
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> *(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;*"

29 U.S.C. § 1132(a) (emphasis added).

### IV. Discussion and Analysis

Defendant requests the Court dismiss Count I and Count II of the Complaint.

*A. Count I*

Count I alleges that the ERISA statute was violated. Accordingly, Count I "seeks equitable relief [pursuant to §502(a)(3)] to remedy a statutory violation by

*reformation* of the Defendant Pension Plan, or by *estopping* the Pension Plan from acting in violation of the ERISA statute." Dkt. No. 14, p. 7 (Pg. ID 472) (emphasis added). The Defendant argues that Count I is invalid as a matter of law because: (1) Count I is a repackaged claim for individual pension benefits and (2) Count I fails to state a valid claim under § 502(a)(3).

>   *1. Repackaging and the Interplay Between ERISA § 502(a)(1)(B) and ERISA § 502(a)(3)*

The Supreme Court, in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), spoke to the interplay between § 502(a)(1)(B) and § 502(a)(3). "As the [Supreme] Court explained, § 502(a)(3) 'functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.' " *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480, (2015) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996)). "[W]here Congress elsewhere provided *adequate* relief for a beneficiary's *injury,* there will likely be *no need* for further equitable relief, in which case such relief normally would *not be appropriate*." *Id.* (emphasis in original) (quoting *Howe*). "ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Id.* Therefore, absent a showing that the relief under § 502(a)(1)(B) is inadequate, there is no trigger for equitable relief under § 502(a)(3). *Id.*

Claimants may not repackage a § 502(a)(1)(B) claim as a § 502(a)(3) claim to obtain equitable relief. "Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury." *Rochow*, 780 F.3d 364, 373. If a plaintiff is "able to avail himself of an adequate remedy for [Defendant's] wrongful denial of benefits pursuant to § 502(a)(1)(B), he cannot obtain additional relief for that same injury under § 502(a)(3)." *Id.* However, if the need for § 502(a)(3) relief implicates a different injury, injunctive relief may be proper. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) (distinguishing between denial of individual claims and a plan-wide mishandling of claims as two distinct injuries). *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005) is informative in the present case.

In *Hill*, the plaintiff brought claims under § 502(a)(3) and § 502(a)(1)(B). The Sixth Circuit allowed the plaintiff to proceed with both claims, despite arguments that the § 502(a)(3) claim was an impermissible repackaged § 502(a)(1)(B) claim. In determining that Hill's § 502(a)(3) claim was distinct from his § 502(a)(1)(B) claim, the Sixth Circuit focused on the relief sought to redress the injuries, not the defendant's wrongdoing. Hill's § 502(a)(3) claim sought injunctive relief to redress defective procedures which allegedly injured participants throughout the benefits plan. On the other hand, Hill's § 502(a)(1)(B)

claim sought monetary compensation to redress the denial of Hill's benefits. The Sixth Circuit held that, "an award of benefits to a particular Program participant based on an improperly denied claim … will not change the fact that [Defendant] is using an allegedly improper methodology for handing [all claims]. Only injunctive relief of the type available under § [502](a)(3) will provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all the Program's claims[.]" *Hill*, 409 F.3d 718. Therefore, *Hill* recognized an exception to *Varity* when a claimant seeks relief for two distinct injuries.

At first glance, the Plaintiff seems to be seeking equitable relief similar to the *Hill* exception.[1] In Count I, the § 502(a)(3) claim, Plaintiff "seeks equitable relief to remedy a statutory violation by reformation of the Defendant Pension Plan, or by estopping the Pension Plan from acting in violation of the ERISA statute." Dkt. No. 14, p. 7 (Pg. ID 472). This pleading is reminiscent of the pleading in *Hill*, which sought injunctive relief to remedy injuries to all program participants. In Count III, the § 502(a)(1)(B) claim, Plaintiff seeks to redress his individual plan benefits. Plaintiff contends that its § 502(a)(1)(B) claim "focuses upon whether the language of the Pension Plan was interpreted or applied in an

---

[1] *Hill* is the strongest case in favor of Plaintiff's argument that it should be allowed equitable relief under § 502(a)(3), but the Plaintiff never even mentions this case.

arbitrary and capricious manner, regardless of whether that language is legal or illegal." Dkt. No. 24, p. 21 (Pg. ID 1013).

The Defendants argue that Plaintiff's § 502(a)(3) claim is barred because it is a mere repackaging of the Plaintiff's § 502(a)(1)(B) claim. The Court agrees. Similar to the Sixth Circuit's analysis in *Hill*, this Court must focus on the relief sought to redress the alleged injuries. The equitable claim in *Hill* sought to redress *plan-wide injuries to program participants*. This was illustrated in Hill's complaint which alleged a violation of fiduciary duty to "*Program members*" by processing claims in in the interest of the plan sponsor, "rather than the *Program beneficiaries*." *Hill*, 409 F.3d 716. In this case, Count I seeks equitable relief to redress denial of Plaintiff's own benefits, not alleged injuries to other people. This is evident in Plaintiff's prayer for relief, which states:

> "ERISA § 502(a)(3) authorizes an action by a participant '(A) to enjoin any act or practice which violates any provision of this title . . . or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title . . . .'
>
> Wherefore, Plaintiff Robert Titus respectfully prays that the court order that (1) the Pension Plan be enjoined from suspending *Robert Titus' Service Pension benefits* in contradiction to the Status Determination made by the Pension Plan in February, 2014, (2) the Pension Plan be reformed under ERISA § 502(a)(3) to require that *Robert Titus' Service Pension benefit* only be suspended in accordance with the Status Determination made in February, 2014, and (3) the Pension Plan be interpreted as providing that *Robert Titus is permitted* to perform sales representation and consulting work for BJ's Crane Consulting without having his Service Pension benefit suspended."

Dkt. No. 1, p. 15–16 (Pg. ID 15–16) (emphasis added).

The language in Count I expressly requests § 502(a)(3) injunctive relief, but only against the suspension of benefits to the Plaintiff. The Court compared the language in Count I to the relief requested in Count III. Count III seeks relief pursuant § 502(a)(1)(B) and states:

> "Additionally, in the light of the equitable relief which should properly be granted under Count I of the Complaint, Robert Titus' rights to receive future benefits should be clarified to provide that his Service Pension benefits are not subject to suspension as the result of his work as a sales representative and consultant for BJ's Crane Consulting, LLC. Wherefore, Plaintiff Robert Titus respectfully prays that judgment be entered against the Defendant Operating Engineers' Local 324 Pension Plan, as follows:
>
> 1. *clarifying that the Service Pension benefits of Plaintiff Robert Titus* are not subject to suspension for work performed by Robert Titus as a sales representative and consultant for BJ's Crane Consulting, and
>
> 2. *clarifying that Plaintiff Robert Titus* is entitled to Service Pension benefits for any month in which he performs less than 40 hours of work covered by the collective bargaining agreement within the State of Michigan, including primary pension benefits and full health care status with subsidized insurance premiums,
>
> 3. *clarifying that Plaintiff Robert Titus* is not obligated to repay Service Pension benefits already paid to him,
>
> 4. *awarding Robert Titus* Service Pension benefits in the amount of any benefit which has been suspended by the Pension Plan since his retirement in March, 2014, including primary benefits and health insurance premium subsidizes, and

> 5. *awarding Plaintiff Robert Titus* prejudgment interest, his court costs, and his attorney fees."

Dkt. No. 1, p. 18–19 (Pg. ID 18–19) (emphasis added).

The language in Count I mirrors the language in Count III. Count I and Count III seek to redress the same injury—denial of Plaintiff's individual benefits. Therefore the *Hill* exception does not apply. Accordingly, Count I is barred because it is an impermissible repackaging of Count III.

Titus relies almost exclusively on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), to support his argument that he may seek an equitable remedy under § 502(a)(3) to reform the Plan. Titus argues that a "claim at law under ERISA § 502(a)(3) [is] separate and distinct from a claim at law under ERISA § 502(a)(1)(B)." Dkt. No. 24, p. 20 (Pg. ID 1012). This argument confuses the issue. There is no dispute that "appropriate equitable relief" may be obtained under § 502(a)(3) to redress an ERISA violation. The issue here, however, is whether Titus seeks to redress a distinct injury that is remediable under § 502(a)(3).

In *Amara*, Titus contends, the Supreme Court found that "equitable relief under § 502(a)(3) was available when a participant sought to remedy a violation of an ERISA obligation." Dkt. No. 24, p. 20 (Pg. ID 1012). This argument misses a critical fact. *Amara* involved a class action brought by employees against their employer and pension plan and sought to reform a recent change to the benefit

pension plan. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). In *Amara*, the Supreme Court held that there was no authority under § 502(a)(1)(B) to reform the plan. *Id*. Because § 502(a)(1)(B) did not authorize relief, the Supreme Court used § 502(a)(3) to redress ERISA violations. *Amara* therefore reinforces the principal that § 502(a)(3) is available as a safety net, only when § 502(a)(1)(B) cannot provide appropriate relief. Here, unlike the case in *Amara*, Plaintiff is seeking relief (his individual pension benefits) that can be adequately remedied by § 502(a)(1)(B) relief. Therefore, Titus' reliance on *Amara* is to no avail.

Later, Titus insists that Count I is not a mere repackaging of Count III because the two claims "raise very different questions and require significantly different proofs." Dkt. No. 24, p. 21 (Pg. ID 1013). Again, the Plaintiff misses the point. Proofs are immaterial to the repackaging inquiry. The dispositive factor is not evidence of the defendant's wrongdoing, but rather the adequacy of relief to redress the claimant's injuries. *See Rochow*, 780 F.3d 364, 371.

Therefore, because Count I and Count III seek to redress the same injury and because the Plaintiff fails to demonstrate that relief under § 502(a)(1)(B) is inadequate, Count I is a repackaging of Count III which must be barred.

### 2. Count I Fails to State a § 502(a)(3) Claim

Even if Count I was not barred as an impermissible repackaging, it would nevertheless be dismissed because it fails to state a § 502(a)(3) claim.

Titus' claim of equitable estoppel rests upon federal common law derived from ERISA. *See Trombly v. Fid. Workplace Servs. LLC*, No. 11-13477, 2013 WL 866456, at *21–22 (E.D. Mich. Mar. 7, 2013) (citing *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010) (recognizing the existence of a federal common law claim of equitable estoppel in the context of ERISA pension benefits)). "The elements of a traditional equitable estoppel claim are as follows: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Chebowski v. Kelsey-Hayes Salaried Pension Plan*, No. 15-13092, 2016 WL 5477335, at *3–4 (E.D. Mich. Sept. 29, 2016) (Hood, C.J.) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

In the context of ERISA, principles of estoppel are rarely applied to vary the terms of unambiguous plan documents because a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Id.*

(quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998)). "However, a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the aforementioned traditional elements of estoppel, 'including that the defendant engaged in *intended deception* or such *gross negligence* as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) *extraordinary circumstances* in which the balance of equities strongly favors the application of estoppel.' " *Bloemker*, 605 F.3d at 444 (emphasis added). "The Sixth Circuit imposed these additional requirements in the context of ERISA pension plans in order to address the concern that estoppel claims could undermine the financial integrity of ERISA pension plans and prejudice the rights and legitimate expectations of third parties to retirement income." *Chebowski*, at \*3–4.

In this case, the Plaintiff fails to establish the additional requirements to impose equitable estoppel in an ERISA case. The Plaintiff does not allege that the Defendant engaged in any form of intentional deception or gross negligence, as required by *Bloemker*. Indeed the words "deception" and "gross negligence" do not appear in the Plaintiff's Complaint, Motion, Response or Reply. Rather than pleading the heightened standard for equitable estoppel articulated in *Bloemaker*,

-16-

Plaintiff again relies on *Amara* to argue that the heightened standard, somehow, does not apply.

According to the Plaintiff, "*Bloemker* was decided before *Amara*" and *Amara* "decided that the normal rules of equity apply under § 502(a)(3) … [not] any heighted or exceptional showing by a participant." Dkt. No. 24, p. 27 (Pg. ID 1019). Plaintiff argues that the *Bloemker* requirements apply only when misrepresentations are made by low level employees answering questions over the telephone. *Id.* Though novel, this argument is not supported by the law. *Bloemker* itself, along with more recent Sixth Circuit decisions apply the heightened showing for misrepresentations made by employees at every level. *See Bloemker*, 605 F.3d at 439, *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 271 (6th Cir. 2016).

In addition to failing to allege intentional deception or gross negligence, Plaintiff later fails to sufficiently allege the extraordinary circumstances, as required by *Bloemker*. According to the Plaintiff, "loss of benefits which a participant would have received absent a pension plan's misrepresentation is exactly the type of extraordinary circumstances recognized in *Bloemker*." Dkt. No. 24, p. 28 (Pg. ID 1020). Plaintiff is incorrect. To accept Plaintiff's argument would allow equitable estoppel for even innocent miscalculations. That result would

undermine the integrity of ERISA pension plans, which *Bloemker* sought to protect. *See Bloemker*,

605 F.3d 436, 441.

Despite Plaintiff's argument to the contrary, *Bloemker* remains applicable here. Plaintiff has failed to establish the heightened requirements for estoppel in an ERISA case. Therefore, Count I fails to state an actionable estoppel claim pursuant to § 502(a)(3).

### *B. Count II*

Turning next to Count II, Defendant argues that Count II should be dismissed because: (1) it is a repackaged claim for individual pension benefits, (2) it seeks a remedy that is available under § 502(a)(1)(B), and (3) it is without legal merit.

Count II alleges a failure to provide a full and fair review. Count II asks the Court to "vacate the decision of the Defendant Pension Plan, and that the Defendant Pension Plan be ordered to conduct a hearing on all future benefit reviews when requested by a participant in accordance with the Pension Plan's review procedure." Dkt. No. 1, p. 17 (Pg. ID 17). Count II requests two separate actions from the Court: (1) to vacate the Plan's decision and (2) to compel the Plan to conduct a hearing for all participants. A separate analysis is appropriate for each action.

First, because Count II seeks reversal of Plaintiff's benefits determination, this portion of Count II is barred because it seeks a duplicative remedy for an injury that can be addressed by relief under § 502(a)(1)(b). *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613 (6th Cir. 2006) (affirming the district court's ability under § 501(a)(1)(B) to remand a Plan's decision back to the Plan administrator for a full and fair review); *see also Varity*, *Rochow*, and *Hill*, as discussed *infra*.

The remaining portion of Count II seeks to redress an alleged injury to all participants, plan-wide. At first glance, this again seems like the Plaintiff is attempting to trigger the *Hill* exception. According to the Plaintiff, the Court should compel a hearing for all participants who are denied benefits because the Pension Plan "specifically provides for a 'hearing'." Dkt. No. 24, p. 28 (Pg. ID 1020). The Plaintiff argues that "failure to grant a hearing in accordance with the Pension Plan's [documents] is a valid claim for violation of ERISA's due process requirement." Dkt. No. 24, p. 29 (Pg. ID 1021). However, there is a fatal flaw in the Plaintiff's argument—the facts do not support it. The Plan's description says, "if a hearing is desired, it should be so indicated in your application request for review." Dkt. No. 21-5. The Pension Plan mentions, but does not require a hearing.

Section 502(a)(3) does not authorize "appropriate equitable relief" at large, but only "appropriate equitable relief" for the purpose of "redressing any violations or enforcing any provisions of ERISA or an ERISA plan." *See Mertens v. Hewitt*

-19-

*Associates*, 508 U.S. 248, 253 (1993). In this case, Plaintiff concedes that ERISA does not require a hearing. Dkt. No. 24, p. 29 (Pg. ID 1021). Moreover, even with the facts construed in Plaintiff's favor, the Pension Plan's plain language simply does not require a hearing. Therefore, because a hearing is not required under ERISA or the plain language of the Defendant's Plan, there is no factual basis for the remaining portion of Count II. Thus, Count II must be dismissed.

### V. Conclusion

For the foregoing reasons, Counts I and II of the Complaint are non-actionable as a matter of law. The Court will **GRANT** Plaintiff's Motion for Judgment on the Pleadings [19] and **DENY** Defendant's Procedural Challenge to the Scheduling Order [14].

**SO ORDERED.**

Dated: February 27, 2017

Detroit, MI

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 27, 2017, by electronic and/or ordinary mail.

/s/Felicia Moses for Tanya Bankston
Case Manager, (313) 234-5213