UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT E TITUS, JR.,

Plaintiff,

v.

OPERATING ENGINEERS' LOCAL
324 PENSION FUND,

Defendant.

_____/

Case No. 16-cv-10951

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

## OPINION AND ORDER DENYING PLAINTIFF'S 1ST MOTION FOR LEAVE TO AMEND COMPLAINT [35]

## I. Introduction

This is a denial of benefits case under the Employee Retirement Income Security Act ("ERISA"). Plaintiff moves to amend his complaint, one year after filing his original complaint and twenty-two days after the Court issued an opinion and order granting Defendant's Motion for Partial Judgment on the Pleadings. For the reasons that will follow, Plaintiff's 1st Motion for Leave to Amend Complaint is DENIED.

## II. Factual Background

Robert Titus ("Plaintiff" or "Titus") worked for Connelly Crane, a crane rental company. Dkt. No. 14, p. 8 (Pg. ID 473). Plaintiff operated and maintained construction cranes. Plaintiff became a member of the Operating Engineers' Local

324 Pension Plan ("the Plan") in August 1978. Dkt. No. 1, p. 3 (Pg. ID 3). The Plan offers a Service Pension for active participants who are at least 55 years old and have at least 30 years of credited service. *Id.* In February 2014, Plaintiff became eligible for a Service Pension. *Id.*, p. 4 (Pg. ID 4). That same month, Plaintiff explored retiring and pursuing his own sales and consulting company (BJ Crane Consulting). *Id.* There were risks to starting his own company. Plaintiff knew he might lose his retirement income. *Id.* Plaintiff sought to embark on running his own company only if he could still receive his pension benefits. *Id.*, p. 5 (Pg. ID 5). According to ERISA and its regulations:

> A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits--
> **(i)** in the case of a plan other than a multiemployer plan, by an employer who maintains the plan under which such benefits were being paid; and
> **(ii)** in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.
>
> The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

29 U.S.C. § 1053 (a)(3)(B).

> Status determination. If a plan provides for benefits suspension, the plan shall adopt a procedure, and so inform employees, whereunder an employee may request, and the plan administrator in a reasonable amount of time will render, a determination of whether specific contemplated employment will be section 203(a)(3)(B) service for

purposes of plan provisions concerning suspension of benefits. Requests for status determinations may be considered in accordance with the claims procedure adopted by the plan pursuant to section 503 of the Act and applicable regulations.

29 C.F.R. § 2530.203-3 (b)(6).

In February 2014, Plaintiff requested a Status Determination from the Pension Plan regarding whether his proposed new business would result in suspension of his retirement benefits. Dkt. No. 1, p. 6 (Pg. ID 6). Plaintiff spoke with the Pension Plan's Manager, Duane Menter. Dkt. No. 14, p. 9 (Pg. ID 474). Menter informed the Plaintiff that establishing BJ Crane Consulting and working as a sales representative and consultant would not result in the loss of his retirement benefits provided that he was not operating and maintaining cranes (also called bargaining unit work) or paid directly by his former employer. *Id.*, p. 10 (Pg. ID 475). The conversation with Menter was later confirmed in a March 28, 2014 letter:

> As Mr. Titus described this opportunity to me, he would be establishing a consulting company, recognized by the IRS and with a unique Tax Identification Number and as proprietor of this Consulting Company would be doing work within the construction industry. I explained to him that as long as he was not personally working for an employer obligated to contribute to the Local 324 Pension and that the work he would be performing would not be that which would be covered under a Collective Bargaining Agreement (Bargaining Unit Work) that he would not be in violation of the Pension Fund's rules regarding retirees who return to work.

Dkt. No. 14-2.

According to the Plaintiff, the Plan also allowed retirees to perform less than 40 hours per month of bargaining unit work without having their retirement benefits suspended. Dkt. No. 14, p. 10 (Pg. ID 475). Plaintiff relied on his conversation with Mr. Menter, retired, applied for a Service Pension, and opened BJ Crane Consulting. *Id.*, p. 11 (Pg. ID 476). Plaintiff maintains that he did occasional bargaining unit work, but never exceeded 40 hours per month. *Id.*

On February 6, 2015, approximately ten months after starting BJ Crane Consulting, the Plan informed the Plaintiff that his retirement benefits were being suspended. Dkt. No. 14-6, p. 2 (Pg. ID 508). According to the Plan, Plaintiff was working "forty (40) or more hours in the same trade or craft in which [he was] employed while participating in the [Plan]." *Id.*

Plaintiff filed his original Complaint on March 16, 2016. Plaintiff's original Complaint asserted three claims: (1) illegal suspension of benefits pursuant to ERISA § 502(a)(3) (Count I), (2) failure to provide a full and fair review pursuant to ERISA § 502(a)(3) (Count II), and (3) recovery of suspended benefits pursuant to ERISA § 502(a)(1)(B) (Count III). Dkt. No. 1.

On October 31, 2016, the Plan filed a Motion for Partial Judgment on the Pleadings. Dkt. No. 19. The critical issue in deciding the Motion for Partial Judgment was whether Count I and Count II of the original Complaint failed as a matter of law.

On February 27, 2017, the Court granted the Plan's motion, in part, and found that Count I and Count II of the original Complaint failed to state a claim under ERISA § 502(a)(3). Dkt. No. 34. After the Court's decision, only Plaintiff's recovery of suspended benefits claim (pursuant to ERISA § 502(a)(1)(B)) remained viable. On March 22, 2017, Plaintiff filed a Motion for Leave to Amend Complaint. Dkt. No. 35. Attached to the motion is an amended Complaint (hereinafter "Proposed Complaint"). Compared to the original Complaint, the Proposed Complaint adds new factual allegations and alleges four Counts. Proposed Count I seeks to enjoin the Plan from future ERISA violations, pursuant to ERSIA § 502(a)(3). Dkt. No. 35-2, p. 15 (Pg. ID 1204). Proposed Count II seeks to reform the Plan to comply with ERISA, pursuant to ERISA § 502(a)(3). *Id.*, p. 22 (Pg. ID 1211). Proposed Count III seeks to equitably estop the Plan from suspending benefits inconsistently with its representations, pursuant to ERISA § 502(a)(3). *Id.*, p. 24 (Pg. ID 1213). Proposed Count IV seeks recovery of Plaintiff's suspended benefits, pursuant to ERISA 502(a)(1)(B). *Id.*, p. 27 (Pg. ID 1216).

Put simply, the Plaintiff's original Complaint sought two types of remedies, injunctive relief pursuant to ERISA § 502(a)(3) and recovery of benefits pursuant to ERISA § 502(a)(1)(B). This Court found that the original Complaint failed to state a proper claim for injunctive relief, and dismissed the injunctive relief claims brought under ERISA § 502(a)(3). After reading the Court's opinion and order, the

Plaintiff revised his Complaint to compensate for the deficiencies with respect to injunctive relief.

### III. Legal Standard for Amending Complaint

Under Federal Rule of Civil Procedure 15(a), leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "The decision whether or not to permit the amendment is committed to the discretion of the trial court." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32 (1971). This discretion, however, is limited by Rule 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits. *Id.* The Sixth Circuit usually reviews a district court's denial of leave to amend for abuse of discretion. *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 671 (6th Cir. 2003).

### IV. Discussion and Analysis

The Defendant argues that amendment should be denied due to delay and futility.

*1. Rule 15 and Delay*

Rule 15 does not establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors Corp.*, 203 F.2d 789, 793 (6th Cir. 1953) (holding that under Rule 15, "certain amendments may be made, even after judgment.") (internal quotations omitted). "Nevertheless, the party requesting leave

to amend must act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (internal quotations omitted). Thus, where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

"Courts are especially inclined to deny a motion brought under Rule 15 'if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them.' " *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 572 (E.D. Mich. 2009) (Lawson, J.) (quoting 6 Charles A. Wright et al., Federal Practice and Procedure § 1487 (2d ed. 1990)). However, the Sixth Circuit requires "at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (internal citations omitted). "Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."

*Moore v. City of Paducah*, 790 F.2d 557, 561–62 (6th Cir. 1986).

The Defendant argues that the Plaintiff seeks amendment too late into the case. Dkt. No. 36, p. 8 (Pg. ID 1297). According to the Defendant, "Plaintiff was aware of all the relevant facts and could have sought to amend his complaint at any

time before the briefing of or decision on Plainitff's two motions seeking discovery in this case and/or the Fund's Motion to Dismiss." Dkt. No. 36, p. 14 (Pg. ID 1303).

The Court understands the Defendant's frustration. The Proposed Complaint was filed over a year after the original Complaint. Furthermore, Plaintiff offers no explanation for his failure to plead certain facts at an earlier stage. None of the facts added in the Proposed Complaint appear new. None of the relevant law is new. It seems that the failings of the original Complaint resulted from oversight or a lack of diligence on the Plaintiff's part.

Nevertheless, in light of the authority in the Sixth Circuit, which indicates that the Defendant must show significant prejudice, the Court concludes that the denial of plaintiff's motion due to delay would be improper. Defendant claims it would be prejudiced by the delay and expense of allowing amendment. The Court finds that any prejudice to the Defendant would be slight. "Delay by itself is not sufficient reason to deny a motion to amend." *Wade*, 259 F.3d at 459. Furthermore, the cost of litigating this motion is at most light prejudice. *See Moore*, 790 F.2d 557, 562 (6th Cir. 1986) (reversing a denial of amendment when the district court found only "relatively light prejudice" to the opposing party).

Therefore, because the Defendant has not shown significant prejudice, denying Plaintiff's amendment due to delay would be improper.

*2. Futility and Rule 12(b)(6)*

Despite Rule 15's liberal amendment policy, courts can deny amendment if the newly proposed claims are futile. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999); *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014). Newly proposed claims are futile if they cannot withstand a motion to dismiss. *Id*. If the district court bases its decision on a legal conclusion that an amended complaint could not withstand a motion to dismiss, the Sixth Circuit will apply de novo review. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).

*A. Legal Standard for Motion to Dismiss*

"To survive a Rule 12(b)(6) motion, a complaint must comply with the pleading requirements of Rule 8(a), which, among other things, requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Thompson v. Bank of Am., N.A.,* 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)). "[A] pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.' " *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[N]aked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Id*. (internal quotations and citations omitted) (citing

*Iqbal*, 556 U.S. at 678). Defendant argues that Proposed Counts I-III, fail to meet the Rule 12(b)(6) threshold.

### B. ERISA Remedial Provisions

ERISA has six remedial provisions. The remedial provisions relevant to this action are § 502(a)(1)(B) and § 502(a)(3), which state:

> A civil action may be brought—
> > (1) by a participant or beneficiary—
> > > (A) for the relief provided for in subsection (c) of this section, or
> > > *(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;*
> > (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> > *(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.*

29 U.S.C. § 1132(a) (emphasis added) (referred to as ERISA § 502(a)).

### C. Repackaging and the Interplay Between ERISA § 502(a)(1)(B) and ERISA § 502(a)(3)

The Supreme Court, in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), spoke to the interplay between § 502(a)(1)(B) and § 502(a)(3). "As the [Supreme] Court explained, § 502(a)(3) 'functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.' " *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015),

*cert. denied*, 136 S. Ct. 480, (2015) (quoting *Varity Corp.*, 516 U.S. at 513). "[W]here Congress elsewhere provided *adequate* relief for a beneficiary's *injury,* there will likely be *no need* for further equitable relief, in which case such relief normally would *not be appropriate*." *Id.* (emphasis in original). "ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Id.* Therefore, absent a showing that the relief under § 502(a)(1)(B) is inadequate, there is no trigger for equitable relief under § 502(a)(3). *Id.*

Claimants may not repackage a § 502(a)(1)(B) claim as a § 502(a)(3) claim to obtain equitable relief. "Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury." *Rochow*, 780 F.3d at 373. If a plaintiff is "able to avail himself of an adequate remedy for [a defendant's] wrongful denial of benefits pursuant to § 502(a)(1)(B), he cannot obtain additional relief for that same injury under § 502(a)(3)." *Id.* However, if the need for § 502(a)(3) relief implicates a different injury, injunctive relief may be proper. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) (distinguishing between denial of individual claims and a plan-wide mishandling of claims as two distinct injuries).

In *Hill*, the plaintiff brought claims under § 502(a)(3) and § 502(a)(1)(B). *Id.* at 716. The Sixth Circuit allowed the plaintiff to proceed with both claims, despite arguments that the § 502(a)(3) claim was an impermissibly repackaged § 502(a)(1)(B) claim. *Id.* at 723. In determining that Hill's § 502(a)(3) claim was distinct from his § 502(a)(1)(B) claim, the Sixth Circuit focused on the relief sought to redress the injuries, not the defendant's wrongdoing. *Id.* at 718. Hill's § 502(a)(3) claim sought injunctive relief to redress defective procedures which allegedly injured participants throughout the benefits plan. *Id.* On the other hand, Hill's § 502(a)(1)(B) claim sought monetary compensation to redress the denial of Hill's benefits. *Id.* at 715. The Sixth Circuit held that, "an award of benefits to a particular Program participant based on an improperly denied claim … will not change the fact that [Defendant] is using an allegedly improper methodology for handing [all claims]. Only injunctive relief of the type available under § [502](a)(3) will provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all the Program's claims[.]" *Hill*, 409 F.3d at 718. Therefore, *Hill* recognized an exception to *Varity Corp.*, when a claimant seeks relief for two distinct injuries.

Defendant argues that the Proposed Complaint is futile because Counts I, II, and III: (1) fail to satisfy the exception in *Hill* and/or (2) are improperly repackaged individual benefits claims. The Court agrees.

*i. Proposed Count I*

Pursuant to ERISA § 502(a)(3), Proposed Count I seeks to: (1) enjoin the Plan from suspending retirement benefits until the Plan adopts status determination procedure; (2) enjoin the Plan from suspending retirement benefits of any employee who contemplated future employment and did not receive a proper status determination; and (3) make whole any employee whose retirement benefits have been suspended in the past. Dkt. No. 35-2, pp. 21–22 (Pg. ID 1210–11).

The Defendant argues that Count I of the Proposed Complaint fails to meet the *Hill* standard based on facts and plausibility.

First, the Defendant attempts to distinguish Titus' case from *Hill* based on facts. *Hill* was a class action involving an automated benefit claims processing system. *Hill*, 409 F.3d at 714. The automated system made claims determinations based on a doctor's diagnosis rather than a claimants symptoms at the time of treatment. *Id*. The Defendant argues that because Titus is a single plaintiff, not seeking class certification and because the present case does not involve a uniform claim-processing procedure, Plaintiff cannot meet the *Hill* standard. Dkt. No. 36, pp. 17–18 (Pg. ID 1306–07).

Although the Defendant's recitation of the facts in *Hill* is correct, the Defendant's argument is unpersuasive. The Defendant reads *Hill* too narrowly. *Hill's* holding did not turn on the automated system or the class action. Rather, *Hill*

based its decision on whether the plaintiff sought "plan-wide injunctive relief, not individual-benefit payments." *Hill*, 409 F.3d at 718.

Next, in a series of arguments, the Defendant seems to argue that Proposed Count I cannot satisfy *Hill* because some of the Plaintiff's claims about the Plan's status determination procedure are untrue and disputed. Dkt. No. 36, p. 18 (Pg. ID 1307). While these may be valid defenses, they are irrelevant to *Hill* and whether the Proposed Complaint can survive a motion to dismiss. *See Thompson*, 773 F.3d at 750 (discussing that at the motion to dismiss stage, the court must accept all well-pleaded factual allegations as true).

Last, the Defendant argues that Proposed Count I cannot satisfy *Hill* because it fails to plausibly establish that other plan participants have ever been denied a status determination or have been irreparably harmed. Dkt. No. 16, pp. 19–20 (Pg. ID 1308–09). This argument is well-taken.

"[N]aked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Thompson*, 773 F.3d at 750 (internal quotations and citations omitted). In this case, the critical flaw with regard to Proposed Count I is that it makes a conclusory allegation suggesting that unidentified plan participants failed to receive a proper status determination and subsequently had their retirement benefits suspended. However, that assertion lacks any factual support. Proposed Count I centers on a letter confirming Titus' status determination. Dkt. No. 38-2, p.

8 (Pg. ID 1447). According to the Proposed Complaint, the letter only referred to Mr. Titus. *Id.* The Proposed Complaint goes on to state that in reliance of the letter about his status determination, Titus retired and later sought benefits. *Id.*, p. 9, (Pg. ID 1448). Plaintiff's Proposed Complaint simply makes no factual allegation that any other plan participant received a similar letter or relied on a similar representation by the Defendant to their detriment. Instead, the Plan correctly points out that the Proposed Complaint asks the Court to speculate that because Mr. Titus received certain treatment, all plan participants receive the same treatment.

When faced with the Defendant's argument, the Plaintiff's Reply illustrates the lack of factual allegations that other plan participants were similarly affected. According to the Plaintiff,

> [T]he Amended Complaint alleges facts showing that *Plaintiff* requested a status determination, that *he* was not told of any additional procedural requirements to obtain a status determination, that the Pension Plan engaged in actions which reasonably led *him* to understand the *he* had been given a status determination, and that the Pension Plan did not given [sic] *him* a status determination which was accurate.

Dkt. No. 38, pp. 7–8 (Pg. ID 1435) (emphasis added). Plaintiff's own characterization of his Amended Complaint confirms that the only factual enhancement in the Proposed Complaint relates to Titus' experience. There is no factual enhancement about other plan participants. Indeed, at oral argument Plaintiff admitted that the Proposed Complaint fails to mention any other plan participant.

The Plaintiff goes on to argue that "the Pension Plan has not presented any evidence that Titus was treated uniquely, or that no other retiree has suffered a benefit suspension." Dkt. No. 38, p. 8 (Pg. ID 1435). This argument incorrectly states the burden. A motion to dismiss challenges the sufficiency of the allegations contained in the complaint. The Defendant need not produce any evidence that Titus was treated uniquely. Rather, to substantiate its conclusory allegations, the Proposed Complaint must contain factual enhancement.

Plaintiff next argues that "[o]ther participants have worked in the industry after retirement." *Id.* (citing ¶¶ 16 and 73 of the Proposed Complaint). For this argument, the Plaintiff cites the following two paragraphs from his Proposed Complaint:

> Robert Titus understood that the Pension Plan might consider his contemplated employment as a violation of either the eligibility or the suspension of benefit rules. However, Robert Titus had heard that the Pension Plan had not disqualified other participants who engaged in similar post-retirement work.
> . . . .
> The employee who received the misrepresentations was unaware of the true application of the suspension of benefits provision, because that participant was aware that other participants had been permitted to engage in similar types of work without having their benefits suspended.

Dkt. No. 38-2, pp. 7, 26 (Pg. ID 1446, 1465).

Neither paragraph, however, helps the Plaintiff's argument. The first paragraph contradicts the Plaintiff's prayer for relief because it states that other,

similar plan participants were <u>not</u> disqualified from receiving their retirement benefits, like the Plaintiff was. The second paragraph vaguely references an unnamed "employee." At first glance, it seems as though there might be factual support for plan-wide relief. However, further examination reveals that the unnamed "employee" referenced is the Plaintiff, not another plan participant.

Later, the Plaintiff relies on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), to support his claim that Proposed Count I seeks to redress two distinct injuries— monetary damages to Titus and all similarly situated participants. Dkt. No. 35, p. 17 (Pg. ID 1178); Dkt. No. 38, p. 9 (Pg. ID 1436). However, *Amara* is distinguishable on facts. First, *Amara* involved a class action brought on behalf of approximately 25,000 employees. *Amara*, 563 U.S. at 424. In this case, Titus the Proposed Complaint does not even mention another plan participant. Second, in *Amara*, the Supreme Court held that there was no authority under § 502(a)(1)(B) to reform the plan. *Id*. at 438. Because § 502(a)(1)(B) did not authorize relief, the Supreme Court used § 502(a)(3) to redress ERISA violations. *Id*. Here, unlike the case in *Amara*, Plaintiff seeks relief (his individual pension benefits) that can be adequately remedied by § 502(a)(1)(B) relief. Therefore, Titus' reliance on *Amara* is to no avail. *Amara* highlights the shortcomings of Titus' Proposed Complaint.

Proposed Count I makes the naked assertion that injunctive relief is needed for all plan participants. However, based on the plain language in the Proposed

Complaint and even the arguments by the Plaintiff, it is clear that there is no factual showing that anyone other than the Plaintiff was or ever has been subject to similar suspension of benefits. Therefore, Count I fails to state a valid claim for injunctive relief pursuant to § 502(a)(3). *See Thompson.*, 773 F.3d at 750 (affirming denial of amendment when Plaintiff "made conclusory allegations" but made "no factual showing" to support her allegations).

### *ii. Proposed Count II*

Defendant argues that Count II is an improperly repackaged individual benefits claim. The Court agrees.

Proposed Count II seeks to reform the Plan: (1) to state that the suspension of benefits will be applied in the manner described in the alleged misrepresentations made by the Plan and (2) to require any participant who relied upon those misrepresentations be made whole. Dkt. No. 38-2, p. 24 (Pg. ID 1463). Although Proposed Count II does not expressly reference ERISA § 502(a)(3), reformation can only occur pursuant to ERISA § 502(a)(3). *See Amara*, 563 U.S. at 422 ("The power to reform contracts is a traditional power of an equity court and is used to prevent fraud.").

At first glance, Proposed Count II seems to be seeking plan-wide mishandling of claims and therefore a completely distinct injury than the Plaintiff's denial of benefits. However, the misrepresentations that are referenced in Proposed Count II

demonstrate that there is no plan-wide injury. Proposed Count II refers to two alleged misrepresentations made by the Plan: one in February 2014; another in March 2014. According to the Proposed Complaint:

> In February, 2014, *Robert Titus* requested a Status Determination from the Pension Plan regarding whether *his* organization of a new business (BJ's Crane Consulting, LLC), and *his* sales representation and crane consultation work would result in a suspension of *his* retirement benefits, so that *Robert Titus* would know whether (1) to retire and pursue *his* business opportunity, or (2) to not retire and keep *his* union position.

> In response to *his* request for a Status Determination, the Pension Plan's Manager told *Robert Titus* that the work *he* was contemplating would not result in suspension of *his* pension benefits, provided that *Robert Titus* was not directly employed by a contributing employer, and as long as *his* work was not covered by the collective bargaining agreement.

> On March 28, 2014, the Pension Plan sent a letter to the Union which was shared with *Robert Titus*, confirming the Pension Plan's Status Determination.

Dkt. No. 38-2, pp. 7–8 (Pg. ID 1446–47) (emphasis added).

Based on the factual allegations in the Proposed Complaint, the two misrepresentations that form the basis for the Plaintiff's reformation claim involve only Titus' individual status determination and no other participant. There is no allegation that any other plan participant other than Titus relied on, or even knew about the conversations between the Plan and the Plaintiff in February and March of 2014. Accordingly, because Proposed Count II merely repackages Titus' individual injury as some type of unsupported plan-wide injury, it must be dismissed.

### iii. Proposed Count III

Defendant argues that Plaintiff's equitable estoppel claim, Proposed Count III, is an improperly repackaged individual benefits claim and also fails to meet *Bloemker.*

Equitable estoppel rests upon federal common law derived from ERISA. *See Trombly v. Fid. Workplace Servs. LLC*, No. 11-13477, 2013 WL 866456, at *21-22 (E.D. Mich. Mar. 7, 2013) (citing *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010) (recognizing the existence of a federal common law claim of equitable estoppel in the context of ERISA pension benefits)). "The elements of a traditional equitable estoppel claim are as follows: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Chebowski v. Kelsey-Hayes Salaried Pension Plan*, No. 15-13092, 2016 WL 5477335, at *3–4 (E.D. Mich. Sept. 29, 2016) (Hood, C.J.) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

In the context of ERISA, principles of estoppel are rarely applied to vary the terms of unambiguous plan documents because a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Id*. (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998)). "However, a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the aforementioned traditional elements of estoppel, 'including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.' " *Bloemker*, 605 F.3d at 444. The Sixth Circuit imposed these additional requirements in the context of ERISA pension plans in order to address the concern that estoppel claims could undermine the financial integrity of ERISA pension plans and prejudice the rights and legitimate expectations of third parties to retirement income." *Chebowski*, at *3–4.

Proposed Count III is titled "Action to Equitably Estop the Pension Plan from Applying its Suspension of Benefit Rule Inconsistently with its Representations." Dkt. No. 38-2, p. 24 (Pg. ID 1463). Proposed Count III requests the Plan be equitably estopped from: (1) suspending the retirement benefit of any employee who

detrimentally relied on a misrepresentation by the Plan; and (2) be ordered to make whole any employee who detrimentally relied upon the misrepresentation made by the Plan. *Id*., p. 26 (Pg. ID 1465).

Proposed Count III fails to expressly state whether it seeks equitable estoppel pursuant to ERISA § 502(a)(3) or § 502(a)(1)(B). However, Plaintiff's motion implies that he is seeking equitable estoppel pursuant to § 502(a)(3) because "[t]he prayer for relief does not mention Titus…and Titus will benefit from [Proposed] Count III only to the extent that any other similar situated participant benefits." Dkt. No. 35, p. 25 (Pg. ID 1186). *See also* 29 U.S.C. § 1132(a) (stating that relief pursuant to ERISA § 502(a)(1)(B) involves recovery of benefits or enforcement or rights only to a single beneficiary). The distinction between the two provisions becomes important when determining whether there is repackaging of an individual benefits claim as a plan-wide claim.

Assuming that Proposed Count III proceeds via ERISA § 502(a)(3), it is an improper repackaging of an individual benefit claim. According to Proposed Count III, the alleged misrepresentations occurred in February 2014 and March 2014. *Id*., pp. 24–25 (Pg. ID 1463–64). As stated previously, the Proposed Complaint makes clear that the representations made in February 2014 and March 2014 were made only to Mr. Titus, involved only his own individual status determination, and were

relied on only by Mr. Titus. There is no factual allegation that any other plan participant relied or even knew about them.

The Parties dispute whether or not Proposed Count III satisfies the *Bloemker* requirements. However, upon finding that Proposed Count III is a mere repackaging of an individual benefits claim, the Court need not analyze *Bloemker*.[1]

## V. Conclusion

Despite the liberal amendment policy articulated in the Federal Rules of Civil Procedure, amendment in this instance must be denied for futility. Plaintiff's attempt to amend his Complaint to obtain equitable relief for all plan participants without any factual enhancement is precisely the type of repackaging the Supreme Court forbade in *Varity Corp*. Accordingly, the Court will DENY Plaintiff's 1st Motion for Leave to Amend Complaint.

---

[1] The law is not entirely clear on whether equitable estoppel proceeds via ERISA § 502(a) or via another, independent federal common law-derived vehicle. As best as the Court can tell, finding that Plaintiff's equitable estoppel claim is a mere repackaging of his individual benefits claim, moots the need to undergo *Bloemker* analysis. Even if *Bloemker*, a Sixth Circuit case, can be interpreted as providing an independent vehicle for equitable relief, the Supreme Court in *Varity Corp.* nevertheless forbids such a duplicative personal recovery. *See Varity Corp.*, 516 U.S. 489 at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief."). Therefore, *Bloemker* analysis is not needed if proposed claim cannot pass muster under *Varity Corp.*

**SO ORDERED**.

Dated: June 28, 2017                    /s/Gershwin A Drain
Detroit, MI                             HON. GERSHWIN A. DRAIN
                                        United States District Court Judge


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 28, 2017, by electronic and/or ordinary mail.


                                        /s/Tanya Bankston
                                        Case Manager, (313) 234-5213