UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT E. TITUS, JR.,

    Plaintiff,

v.

OPERATING ENGINEERS' LOCAL 324
PENSION PLAN,

    Defendant.
_____/

Case No. 16-cv-10951

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [41] AND DENYING PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [42]**

**I.    Introduction**

This is a case regarding the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. *See* Dkt. No. 1. On March 16, 2016, Plaintiff Robert Titus, Jr. filed a Complaint against Defendant Operating Engineers' Local 324 Pension Plan ("the Pension Plan") seeking remedies under ERISA. *Id.* In his Complaint, Titus asserted three claims, asking that the Court: (i) enjoin the suspension of his retirement benefits and reform the Pension Plan under ERISA §§ 203(a)(3)(B) and 502(a)(3); (ii) order the Defendant to provide a full and fair review of his benefit claims under ERISA §§ 502(a)(3) and 503; and (iii) both grant

1

retirement benefits he contends were improperly suspended and require that the Plan clarify his right to benefits, pursuant to ERISA § 502(a)(1)(B).

The Court issued a Case Management Scheduling Order for Review of ERISA Administrative Denial of Benefits on August 31, 2016, and the Administrative Record was filed under seal pursuant to Local Rule 5.3(a) on September 30, 2016. *See* Dkt. Nos. 11, 12.

The Defendant filed a Motion for Partial Judgment on the Pleadings on October 31, 2016. *See* Dkt. No. 19. In this motion, the Defendant sought judgment on Plaintiff's claims I and II. *Id.* The Court granted Defendant's motion and later denied Plaintiff's Motion for Leave to Amend. *See* Dkt. Nos. 34, 40. Accordingly, only Plaintiff's third claim remains for adjudication.

Presently before the Court are the parties' Cross-Motions for Judgment on the Administrative Record. *See* Dkt. Nos. 41, 42. For the reasons that follow, the Court will **GRANT** Defendant's Motion for Judgment on the Administrative Record [41] and **DENY** Plaintiff's Cross-Motion for Judgment on the Administrative Record [42].

## II. Background

### A. Retirement Considerations

Titus joined the Operating Engineers Local 324 in August 1978, and his employment primarily consisted of operating and maintaining cranes. Dkt. No. 1,

p. 3 (Pg. ID 3); Dkt. No. 45, p. 5 (Pg. ID 1804). Through his employment, he became a member of the Pension Plan, a multi-employer defined benefit plan. Dkt. No. 1, pp. 1–3 (Pg. ID 1–3). The Pension Plan provides a Service Pension for active participants who have both reached the age of fifty-five and have at least thirty years of credited service. *Id.* at 3 (Pg. ID 3).

In February 2014, Titus became eligible to receive benefits under the Pension Plan. *Id.* at p. 4 (Pg. ID 4). At this time, he contemplated first retiring and then starting his own sales and consulting company. *Id.* Titus understood that the Plan imposed restrictions on beneficiaries' post-retirement employment, and thus, he sought to start a company as long as it did not impact his retirement income. *Id.*

ERISA offers guidance related to restrictions on post-retirement employment, where a retiree is receiving a pension. It provides that:

> [a] right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits--
> . . .
> (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

29 U.S.C. § 1053(a)(3)(B). In addition, ERISA contains a provision related to a status determination and the suspension of benefits.

3

> Status determination. If a plan provides for benefits suspension, the plan shall adopt a procedure, and so inform employees, whereunder an employee may request, and the plan administrator in a reasonable amount of time will render, a determination of whether specific contemplated employment will be section 203(a)(3)(B) service for purposes of plan provisions concerning suspension of benefits. Requests for status determinations may be considered in accordance with the claims procedure adopted by the plan pursuant to section 503 of the Act and applicable regulations.

29 C.F.R. § 2530.203–3(b)(6).

When he became eligible to receive a pension in February 2014, Titus requested a status determination regarding the work contemplated and spoke with the Pension Plan Manager, Duane Menter. Dkt. No. 1, p. 6 (Pg. ID 6). Menter summarized this conversation in a letter dated March 28, 2014. Dkt. No. 12, p. 19 (Pg. ID 93). Mentor confirmed that he advised Titus as follows:

> as long as [Titus] was not personally working for an employer obligated to contribute to the Local 324 Pension and that the work he would be performing would not be that which would be covered under a Collective Bargaining Agreement (Bargaining Unit Work) that he would not be in violation of the Pension Fund's rules regarding retirees who return to work.
>
> However if he were to be found doing the work of a bargaining unit employee or was being compensated directly by a contributing employer, his monthly Pension Benefit would be suspended under the rules of the Plan.

*Id.* Menter's letter implicitly refers to Section 3.6 of the Pension Plan, which concerns the suspension of benefits. That section allows a retiree receiving benefits to work less than 40 hours in any calendar month in the same industry and same

4

trade or craft as the retiree had worked prior to retirement. *Id.* at p. 3 (Pg. ID 77). It mandates the suspension of a retiree's benefits, however, if it is found that the retiree has performed such work for at least 40 hours in a calendar month. *Id.*

Based on Menter's February 2014 advice, Plaintiff retired and started a sales and consulting construction company, BJ's Consulting Company. Dkt. No. 41-1, p. 14 (Pg. ID 1573). Specifically, Titus submitted an application for retirement benefits on February 24, 2014 and began receiving benefits on March 1, 2014. Dkt. No. 1, p. 7 (Pg. ID 7); *see also* Dkt. No. 41-1, p. 9 (Pg. ID 1568).

B. Suspension of Benefits

Approximately one year later, in February 2015, Titus was notified that his benefits were being suspended as of March 1, 2015. Dkt. No. 1, p. 8 (Pg. ID 8). The reason was that he had allegedly violated the restrictions on returning to work. *Id.*; *see also* Dkt. No. 12, p. 37 (Pg. ID 111). His suspension notice reflected that he was exceeding the 40 hour restriction on work in the same industry, and trade or craft as that in which he had worked pre-retirement. Dkt. No. 1, p. 8 (Pg. ID 8); *see also* Dkt. No. 12, p. 37 (Pg. ID 111).

The suspension was the result of an investigation in which a person observed Titus working at Connelly Crane, a company he had worked for from 1999 until his retirement. Dkt. No. 12, p. 46 (Pg. ID 120); Dkt. No. 41-1, p. 14 (Pg. ID 1573). The investigator trailed Titus for several months and determined that "[Titus] is working

5

full time, doing the same job he did prior to retirement, well in excess of 40 hours per month." Dkt. No. 12, p. 46 (Pg. ID 120). In particular, the investigator "observe[d] Titus operating and fueling cranes on various jobsites and working from Connelly Crane." *Id.*; Dkt. No. 41-1, p. 14 (Pg. ID 1573).

Titus appealed the suspension in February 2015, and the Plan's Board of Trustees heard and denied his appeal the following month. Dkt. No. 12, p. 197–202 (Pg. ID 271–76). The Trustees denied his appeal on the grounds that he was working in the same industry, and trade or craft as he had pre-retirement, and had not notified the Trustees of this employment. *Id.* at p. 201 (Pg. ID 275).

In July 2015, Plaintiff again appealed the suspension of his benefits. *Id.* at p. 9 (Pg. ID 83). The Trustees denied his appeal in September 2015, finding "that [his] proposed employment is substantially similar to the work [he] performed prior to retirement and could even fill a position covered by the collective bargaining agreement." *Id.* at p. 5 (Pg. ID 79). In their written explanation, the Trustees noted that Menter's letter was part of their decision-making process, but they did not address it. *Id.* Instead, they emphasized that Titus's post-retirement work was "reasonably related to the underlying skills associated with the trade or craft for which [Titus] was trained or in which he acquired his work experience." *Id.* at 6 (Pg. ID 80). The Trustees also evaluated letters from construction companies which Titus had submitted in support of his appeal. *Id.* The Trustees concluded that the

6

letters suggested Titus had violated the Plan's suspension policy, as the companies said Titus had supported their operations for "many years" and "ha[d] worked in the area helping business [sic] with cranes and lifting needs." *Id.* at 5 (Pg. ID 79).

### III. Legal Standard

ERISA allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

A district court must review a denial of benefits under an ERISA plan through "a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115, 109 S.Ct. 948, 103 L. Ed. 2d 80 (1989). Yet where an administrator or fiduciary has been granted "a clear grant of discretion," as the parties agree is the situation here, a court reviews the denial of benefits under the "highly deferential arbitrary and capricious standard." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991); *see* Dkt. No. 12, p. 5 (Pg. ID 79).

Under this standard, a court must "defer to the underlying decision so long as it is rational in light of the plan's provisions." *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 567 (6th Cir. 2013) (citations omitted). A court "will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning

7

process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). "[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

This standard allows a court to overturn an administrator's decision "only by finding that they abused their discretion—which is to say, that they were not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990); *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000). "It is only if the court is confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." *Erickson v. Metro. Life Ins. Co.*, 39 F. Supp. 2d 864, 870 (E.D. Mich. 1999).

**IV.  Discussion**

Plaintiff's claim arises under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Under this section, Plaintiff seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan." *Id.* Plaintiff alleges the Trustees arbitrarily suspended his benefits based on his post-retirement work, or arbitrarily failed to otherwise clarify his right to retirement benefits. Dkt. No. 1, p. 2 (Pg. ID 2).

Plaintiff also argues that a Department of Labor regulation requires the Plan to have a status determination procedure, and the Plan failed to satisfy this requirement. *See* 29 C.F.R. § 2530.203–3(b)(6).

For the reasons discussed herein, the Defendant is entitled to judgment on the Administrative Record, and thus, the Plaintiff is not entitled to judgment on the Administrative Record.

A. Plan Restriction of Benefits

As an initial matter, when the Court granted Defendant's Motion for a Partial Judgment on the Pleadings, it held that the Plaintiff's claim of equitable estoppel failed as a matter of law. *See* Dkt. No. 34, p. 16 (Pg. ID 1157). Therefore, as Plaintiff concedes, he cannot argue here that representations by the Plan Manager, Duane Menter, equitably estop the Pension Plan from suspending his benefits.

Turning to his arguments, Titus concedes that on its face, the Plan suspends benefits for any work in the construction industry related to his pre-retirement duties. Dkt. No. 42, p. 8–9 (Pg. ID 1610–11). He asserts that the Plan's unambiguous language, however, "conflicted with his understanding that retirees had been allowed

9

to perform non-bargaining unit work without suffering a suspension of benefits." *Id.* at p. 9 (Pg. ID 1611). His understanding is primarily based on a February 2014 conversation with Menter, and Menter's letter confirming their conversation. *Id.* at p. 16 (Pg. ID 1618). According to Titus, the Trustees' decision to suspend his benefits was arbitrary and capricious because the Trustees did not explain why Menter's interpretation lacked merit, they did not question Menter about his understanding of the Plan, or both. *Id.* at p. 13 (Pg. ID 1615).

The Pension Plan argues, and the Court agrees, that the Trustees considered Menter's letter and, based on substantial evidence, concluded that the Plan authorized the suspension of Plaintiff's benefits.

The parties agree that Article III, Section 3.6 of the Plan governs Titus's claim. This section mandates the suspension of a retiree's benefits, where the retiree satisfies all of the following criteria:

> (1) He becomes actively employed or self-employed for at least forty (40) hours in any calendar month . . . ;
> (2) Such employment is in the same industry as the type of business activity engaged in by any Employer who was an Employer at the time the Retired Employee Participant first received monthly benefits (or would have received monthly benefits had he not remained in or returned to an employed status); and
> (3) Such employment is in the same trade or craft in which the Retired Employee Participant was employed at any time while participating in the Plan, including any supervisory or managerial activity which is reasonably related to the underlying skills associated with the trade or craft for which the Retired Employee Participant was trained or in which he acquired his work experience[.]

10

Dkt. No. 12, p. 3 (Pg. ID 77).

Applying this section, the Trustees twice denied Titus's request for a waiver, once on March 6, 2015 and again on September 10, 2015. *Id.* at pp. 3–6, 27–31 (Pg. ID 77–80, 101–05). On both occasions, they reasoned that based on their "review[] at length" of the relevant materials, including Menter's March 2014 letter, Section 3.6 required the suspension of Titus's benefits. *See, e.g., id.* at p. 5 (Pg. ID 79). Specifically, the Trustees concluded that Titus, both pre- and post-retirement, was employed in the same industry and the same trade or craft, and that his supervisory duties post-retirement were reasonably related to the skills he cultivated pre-retirement. *Id.* at pp. 5, 27 (Pg. ID 79, 101).

Additionally, Titus submitted several letters from construction companies in support of his appeal. *Id.* at p. 5 (Pg. ID 79). The Trustees observed that these letters indicated "that [his] proposed employment is substantially similar to the work [he] performed prior to retirement and could even fill a position covered by the collective bargaining agreement." *Id.* The Trustees cited excerpts from those letters in which the companies said Titus had supported their construction operations for "many years." *Id.* The Trustees did not, however, offer analysis of Menter's letter to Titus. *Id.*

Titus ignores this evidence and instead asserts that Menter's letter suggests he was restricted to less than 40 hours a month for bargaining unit work, but was not

11

restricted as to time spent performing non-bargaining unit work. Dkt. No. 42, p. 9 (Pg. ID 1611). This assertion misses the point.

The Trustees determined that Titus's alleged non-bargaining unit work was actually bargaining unit work. Dkt. No. 12, at p. 5 (Pg. ID 79). Indeed, they observed that he could have filled a position in the collective bargaining agreement. *Id.* In their March 2015 denial of Titus's appeal, the Trustees relied on an investigator's observations of Titus's work. *Id.* at p. 201 (Pg. ID 275). This investigator trailed Titus for several months and concluded that "[Titus] is working full time, doing the same job he did prior to retirement, well in excess of 40 hours per month." *Id.* at p. 46 (Pg. ID 120). Specifically, the investigator "observe[d] Titus operating and fueling cranes on various jobsites and working from Connelly Crane," a company Titus worked for from 1999 until his retirement in 2014. *Id.*; *see also* Dkt. No. 41-1, p. 14 (Pg. ID 1573).

Moreover, to the extent Titus contends the Trustees failed to ask Menter questions about the letter, this argument is unpersuasive. The record does not contain a transcript or any other evidence as to what was said in the Trustees meetings regarding Titus's appeal. Yet the record does reflect that Menter attended the Board of Trustees meetings during which they decided Titus's appeal, and Menter presented the appeal for consideration. *See* Dkt. No. 12, p. 203 (Pg. ID 277). These facts then undercut Titus's bare assertions.

12

Despite this evidence, Titus argues that the Trustees arbitrarily failed to consider Menter's understanding of the plan and in support cites *Glenn v. MetLife*, 461 F.3d 660, 672 (6th Cir. 2006). This case is distinguishable.

In *Glenn*, the defendant assisted a claimant in securing disability benefits from the Social Security Administration, and recouped disability payments from the plaintiff given the Administration's finding. *Id.* at 666–67. Less than two years later, however, the defendant denied the claimant benefits and did so without addressing the Social Security Administration's finding of disability. *Id.* Significantly, the defendant was charged with both deciding the claimant's eligibility for benefits and paying those benefits. *Id.* In concluding that the defendant's decision was not arbitrary, the district court failed to consider these dual responsibilities and the resulting apparent conflict of interest. *Id.* at 667. For these reasons, the Sixth Circuit held that the defendant arbitrarily denied the claimant benefits. *Id.* at 669.

Here, the Trustees have not taken inconsistent positions about whether Titus was entitled to benefits while he was working for BJ's Crane Consulting. Indeed, they have consistently concluded that his benefits were to be suspended because of this work. Moreover, the conflict of interest, which the Sixth Circuit weighted heavily in *Glenn*, is absent here. The Trustees do not both decide and pay claimants' benefits, the Trustees as individuals do not have a financial stake in the outcome of

13

claims for benefits, and no evidence in the record suggests that financial considerations impacted the Trustees' decision. *See, e.g., Foltz v. Barnhart Crane & Rigging, Inc.*, 636 F. App'x 677, 681 (6th Cir. 2016) (concluding there was no conflict of interest where a Fund was a multi-benefit employer plan without a profit motive, its Trustees received no financial benefit from approving or denying a claim, and in any event, there was no evidence that financial considerations factored into the Trustees' decision to deny benefits); *see also Lee v. Sheet Metal Workers' Nat. Pension Fund*, 760 F. Supp. 2d 711, 718–19 (E.D. Mich. 2010) (observing that "the Trustees of the defendant Fund determine eligibility for pension benefits and the benefits are paid from a fund to which contributing employers pay," but this "alleged structural conflict does not deserve much weight.")

Accordingly, the Trustees' decision to suspend Titus's benefits was not arbitrary and capricious, and was based on substantial evidence.

B. Status Determination Procedure

Titus presents three arguments regarding a status determination. First, Titus argues that Department of Labor Regulation 29 C.F.R. § 2530.203–3(b)(6) requires a status determination procedure, and the Summary Plan Description ("SPD") does not include a procedure for obtaining a waiver. Dkt. No. 42, p. 9 (Pg. ID 1611). Second, he contends that if the SPD has a status determination process, this process solely entails contacting the Plan Office with any questions about the Plan. *Id.* at p.

14

24 (Pg. ID 1626). Third, he asserts that he complied with this procedure. *Id.* These arguments are unavailing.

As to Titus's first and second arguments, the Defendant correctly notes that both the June 2001 and May 2013 SPD documents contain a procedure for a status determination. *See* Dkt. No. 12, pp. 172–173, 306–07 (Pg. ID 246–47, 380–81). Both documents provide that "[i]t is important that [participants] notify the Fund Office in writing as soon as [they] become employed after [they] begin to receive benefits under the Plan." *See id.* at pp. 172, 306 (Pg. ID 246, 380). Likewise, the Plan details the procedure for requesting a status determination. *Id.* at p. 5 (Pg. ID 79). There, a retiree looking to return to work must "notify the Trustees in advance, on a form prescribed and furnished by them, of his intent to commence such work and the Trustees must approve such work, in their sole discretion, before its commencement." *Id.* This procedure establishes that where retirees do not obtain a waiver, their benefits will be suspended for the entire time that they worked without a waiver. *Id.*

Third, the Court agrees with the Defendant that Titus did not comply with this procedure. Titus submitted a written request for a waiver in March 2015, long after he had begun working in violation of the Plan requirements. Dkt. No. 41-1, p. 10–11 (Pg. ID 1569–70).

15

Finally, even if Titus is correct that he followed the appropriate procedures, he still cannot succeed on his claims. Because the Trustees did not arbitrarily conclude that he violated the Plan by performing bargaining unit work at least 40 hours a month, his claims fail.

Consequently, Titus's arguments regarding the Pension Plan's status determination procedure lack merit.

## V.  Conclusion

For the reasons stated herein, the Court will **GRANT** Defendant's Motion for Judgment on the Administrative Record [41], and **DENY** Plaintiff's Cross-Motion for Judgment on the Administrative Record [42].

Dated: November 8, 2017

s/Gershwin A. Drain  
GERSHWIN A. DRAIN  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 8, 2017

s/Tanya R. Bankston  
TANYA R.BANKSTON  
Case Manager & Deputy Clerk